UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

DATABIT INC.,                                          Case No. 08cv1229
                                                       (MGC)(AJP)
                                      Plaintiff,

         - against -


MORDECHAI HANINOVICH, OSI KAMINER,
JOHN DOE #1, JOHN DOE #2 and JOHN DOE #3,

                                      Defendants.

------------------------------------------------------------------------x




**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TRO
AND PRELIMINARY INJUNCTION**




February 12, 2008




Paul Savad & Associates
Attorney for Plaintiff DataBit Inc.
55 Old Turnpike Road, Suite 209
Nanuet, New York 10954

TABLE OF CONTENTS

Page

STATEMENT OF FACTS ........................................................    1

POINT I..............................................................................    3

THE INFORMATION SOUGHT TO BE PROTECTED
CONSTITUTES A PROPRIETARY TRADE SECRET

      Knowledge of Information Outside the Business....    4

      Knowledge of This Information by Other
      Employees.............................................................    4

      Efforts to Guard the Information............................    5

      The Value of the Information.................................    5

      Effort and Expense to Develop the Information......    6

      Ease of Acquisition of This Information...................    6

      Cases Applying These Standards...........................    7

POINT II..............................................................................    7

THE PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF

      Irreparable Injury....................................................    8

      Likelihood of Success on the Merits.......................    9

      Balancing of Equities.............................................    10

CONCLUSION...........................................................................    11

## STATEMENT OF FACTS

The facts are briefly presented in the attorney's affirmation of Paul Savad, and are detailed in the affidavits of Plaintiff DataBit Inc.'s president, Shlomie Morgenstern, its CFO, Neil Fogel, and two of its long-term account representatives, Rami Zilberschmidt and Gilbert Gehler.

For the sake of brevity, the following are the essential facts:

- Plaintiff DataBit sells computer consulting, sales and maintenance services to its clients in the US and Israel.  It was formed in 1990.

- Defendant Modi Haninovich has worked as an account representative for DataBit since 1992, responsible to secure new clients and service their accounts in return for DataBit providing all capital, paying all expenses, paying a base amount plus commissions, providing a cell phone, a car, medical benefits, administrative assistance, technical personnel, ordering and shipping services.

- Haninovich worked without a written contract and was carried on the books as the only 1099 contractor at the company, although all other account representatives are employees and have the same responsibilities and compensation. He did not come to DataBit with any existing clients.  No one at the company recalls why he was classified as a 1099 contractor, but Haninovich's status as an Israeli citizen without a greencard is most likely the explanation.

- Montefiore became a client of DataBit in late 1994 or early 1995 through Haninovich's efforts as an account representative for DataBit, while

working for and being financed by DataBit.  The account grew slowly, until in 2007 the account generated eight million dollars of revenue for DataBit, which constitutes 60% of all revenues.  Although there is no written contract with Montefiore, there is a 13-year history of actions and expectations that DataBit will service Montefiore's computer system, and Montefiore will pay the agreed price.  Montefiore had demanded that DataBit continue to provide services in the wake of Haninovich's departure from DataBit, in order to continue service without disruption.

- Osi Kaminer was an employee of DataBit assigned to work full-time as Haninovich's assistant on the Montefiore account.

- Both Haninovich and Kaminer necessarily in the course of their work for DataBit have acquired knowledge of proprietary trade secret information, including information on pricing, costs and profit margin, and knowledge of Montefiore's precise needs for over 10,000 computer stations, including dates for license renewals, status of every computer, as well as developing personal relationships with all of the contacts at Montefiore required to timely maintain the system without interruption.

- The information on pricing, costs and profit margin on the Montefiore account are a carefully guarded trade secret revealed only to key personnel of DataBit on a need-to-know basis to service the Montefiore account.

- Haninovich resigned on Friday, January 25, 2008, while the president of DataBit, Shlomie Morgenstern, was out of the country.

1

- Kaminer resigned on February 1, 2008.

- Haninovich and DataBit are the only ones able to service the Montefiore account without a transition period to learn the current needs of the computer system and the contacts required to service the client effectively. According to the affidavit of DataBit's president, Shlomie Morgenstern, it would take a competitor six months to be able to deliver the level of service now supplied by DataBit.

- Haninovich and Kaminer delayed forwarding to DataBit's president Montefiore's demand (made on Monday, January 28, 2008, after Haninovich's Friday resignation), that the president of DataBit advise him immediately of how DataBit will honor its commitment to Montefiore now that Haninovich had resigned without notice.

- Haninovich and Kaminer delayed for weeks (unbeknownst to DataBit until after the fact) filling Montefiore's pending orders, apparently planning to divert new orders to themselves.

- Haninovich did not return DataBit's computer for one full week after he resigned, and then only after we demanded its return.  It is likely that he retained copies of confidential records.

- Haninovich and his friend's company, Advanced Solutions & Supply LLC, are currently supplying computer services to Montefiore and are in active competition with DataBit.  This competition and diversion of DataBit's business began while Haninovich still worked for DataBit.

2

These facts confirm that Haninovich has positioned himself to take the account for his own benefit, with the competitive advantage of having trade secret information that could not be duplicated by any other competitor without substantial expenditure of time, effort and money.  The facts also suggest that Kaminer was or is assisting Haninovich in these efforts.

Time is of the essence.  To date, Montefiore is still demanding that DataBit honor its obligations to service its computer system of 10,000 computers.  However, this could change at any moment, if Haninovich, Kaminer and their associates use their misappropriated information to take over the Montefiore account, offering their intimate knowledge of Montefiore's operation and DataBit's quotes and pending projects.

Advanced Solutions & Supply LLC and all others working in concert with Haninovich and/or Kaminer, must be enjoined from making use of DataBit's misappropriated trade secret information, to gain a competitive advantage against DataBit.

## POINT I: THE INFORMATION SOUGHT TO BE PROTECTED CONSTITUTES A PROPRIETARY TRADE SECRET.

A trade secret or confidential information includes a compilation of information which is used in one's business and which gives the possessor of the information a competitive advantage over one's competitors who do not possess this information. *Ashland Management Inc. v. Janien*, 82 N.Y.2d 395 (1993).

In determining whether information is a trade secret, the Court should consider: "(1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the

3

value of the information to [the business] and [its] competitors; (5) the amount of effort and money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." Restatement of Trorts, §757, comment b.  *See also, Ashland Management Inc. v. Janien*, 82 N.Y.2d 395 (1993); *North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999).

Taking each consideration separately, there is no question that the information sought to be protected is a trade secret.

### Knowledge of Information Outside the Business

Nobody outside of DataBit knows which suppliers DataBit uses, the cost to DataBit, the price to Montefiore[1], or DataBit's profit margin (Morgenstern Affidavit; Verified Complaint, **Exhibit A** of Morgenstern Affidavit).  No one outside of Haninovich and Kaminer know all the details of Montefiore's 10,000-station computer system, which dates licences expire, which equipment needs upgrading and when, who to contact at Montefiore to timely receive, install and service the equipment, and other inside information.

### Knowledge of This Information by Other Employees

The information concerning pricing, costs and profit margin are known only to key personnel on a need-to-know basis to service the Montefiore account.  The majority of the employees at DataBit have no access to this information.

---

[1] Although Montefiore knows what it pays for DataBit's services, it is unlikely that it would reveal it to DataBit's competitors, because Montefiore would not then get the lowest possible bid, but rather, merely a bid below that of the existing price.

**Efforts to Guard the Information**

In addition to keeping the information within a close inner circle of key employees, DataBit has an employee manual that defines this type of information as a trade secret (see Morgenstern Affidavit and **Exhibit G** annexed thereto).

The company does not have written non-compete agreements, since it has a very stable, long-term staff with little turn-over, and has never had this problem before now. Such provisions are, in reality, no more secure than a confidentiality policy, employee loyalty and long-term good will. The number of cases litigated despite non-compete provisions are legion.

**The Value of the Information**

It cannot be disputed that pricing, cost and profit margin are invaluable pieces of information to competitors. Release of such information invites underbidding. The fact that no one has taken the Montefiore account from DataBit in 13 years is evidence that this information is not easily obtained, or Montefiore would have been underbid long ago (we will provide the court *in camera* with these figures, if requested).

Similarly, the intimate knowledge of the specific needs of Montefiore, licensing renewal dates, the status of each computer and what needs to be upgraded, and the personal relationships with the employees in many departments at Montefiore needed to get the job done, are equally invaluable. This gives Haninovich a "head start" over any other competitor who does not have this information.

As noted in *Compsolve, Inc. v. Neighbor*, Slip Copy, 18 Misc.3d 1104, 2007 WL 4442412 (Sup. Ct. Erie Co., 2007): "Essentially, it is the immediate "head start" by the former employee in attacking the business of the former employer which gives the

former employee an unfair competitive advantage as opposed to other competitors in the marketplace (*Integrated Cash Mgt. Servs., Inc. v. Digital Transactions,* 920 F2d 171, 175 [2d Cir. 1990] [*additional citations omitted*])."

This situation is similar to that found in *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995), which analogized the former employer's predicament as that of "a coach, one of whose players has left, playbook in hand, to join the opposing team before the big game." The "playbook" is invaluable to the other team, just as pricing information and other inside information is invaluable to DataBit's competitiors.

### Effort and Expense to Develop the Information

DataBit has spent years financing the development of this information and the client good will. It has paid Haninovich a base salary, commissions, cell phone costs, car costs, all expenses, and more, in return for his work. It has provided all of the capital required, paid all expenses, provided a full-time assistant dedicated to the account (Kaminer), provided technicians, ordering support and shipping services for 13 years (Morgenstern Affidavit and Verified Complaint). Compensation to Haninovich in 2006 amounted to $314,169, and will be more for 2007 (Fogel Affidavit). This does not include the cost of all of the support services (providing administration, ordering and shipping), capital layout and technicians provided by DataBit.

### Ease of Acquisition of This Information

No other competitor can properly acquire this information without substantial investment of time, effort and expense. They certainly could not properly acquire the

6

information concerning DataBit's costs and profit margin. No other provider could supply uninterrupted services to Montefiore without a six-month effort.

### Cases Applying These Standards

In *Stanley Tulchin Associates, Inc. v. Vignola*, 186 A.D.2d 183, 185 (2d Dep't. 1992), the Appellate Division Second Department found as a matter of law that customer lists containing the names of key contact employees, as well as the volume of business done with the clients constituted trade secrets. There was no directory of such information for competitors to access. The same is true here.

Pricing and cost information was held to be confidential in *Support Systems Associates, Inc. v. Tavolacci*, 135 A.D.2d 704, 705 (2d Dep't. 1987), "because if it were known to competitors, they would be in a position to underbid the plaintiff".

In *Compsolve, Inc. v. Neighbor*, Slip Copy, 18 Misc.3d 1104, 2007 WL 4442412 (Sup. Ct. Erie Co., 2007) the court parsed out non-confidential information, but held as protectable information that "the defendant possessed at the time he was terminated by plaintiff concerning the renewal dates and existing contract rates for plaintiff's existing customers . . .".

There is no question that the information possessed by Haninovich and Kaminer is a trade secret.

### POINT II:   THE PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF

Injunctive relief is warranted where a party demonstrates the following elements: 1) absent injucntive relief, it will suffer irreparable harm, and 2) either a) that it is likely to succed on the merits, or b) that there are sufficiently serious questions going to th merits

to make them fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Estee Lauder Companies Inc., v. Batra*, 430 F.Supp.2d 158, 170 (S.D.N.Y. 2006).

All of these standards are met in this case.


**Irreparable Injury**

"New York law recognizes that irreparable harm is presumed when trade secrets have been misappropriated (*citations omitted*) (*emphasis added*)." *L-3 Communications Corporation v. Kelly*, 10 Misc.3d 1044(A), 2005 WL 3304130 (Sup. Ct. Suffolk Co. 2005), (where an independent contractor was not enjoined from working for the competition, despite knowledge of proprietary information, because the parties' written agreement permitted the contractor to work for competitors, and there was no proof that the proprietary information would be used).  See also *FMC Corporation v. Taiwan Tainan Giant Industrial Co., Ltd.*, 730 F.2d 61 (2d cir. 1984) ("it is clear that the loss of trade secrets cannot be measured in money damages.");

In the case at bar, the defendants' use of DataBit's proprietary information concerning pricing, cost, profit margin, quotes for projects in the pipeline, knowledge of license expiration dates, etc., would necessarily inform any proposal they might give to Montefiore.  Irreparable injury may be found where trade secrets will inevitably be disclosed.  *EathWeb, Inc. v. Schlack*, 71 F.Supp.2d 299, 309 (S.D.N.Y. 1999).  And see *Monovis, Inc. v. Aquino*, 905 F.Supp. 1205, 1234 (W.D.N.Y. 1994) ("even assuming the best of good faith, it is doubtful whether the defendant could completely divorce his knowledge of the trade secrets from any...work he might engage in.").

Furthermore, although it is possible to calculate lost profits from past performance, it is impossible to know how long DataBit might have enjoyed such profits with Montefiore, were it not for the defendants' wrongful actions.  Nor is it possible to know how many potential customers might be lost because DataBit could no longer boast of Montefiore as its client.  Such damages are incalculable.

Finally, in *Safferstein v. Wendy*, 137 Misc.2 1032, 1037 (Sup. Ct. N.Y. Co. 1987), the court granted an injunction based in part on the consideration that withholding an injunction would result in "corporate death" for the applicant. Here, the plaintiff will be forced to cut back its operations by 60% if it loses the account, and the business will no longer be viable, according to the affidavits of Morgenstern and Fogel.

### Likelihood of Success on the Merits

Employees (like Kaminer) and independent contractors (like Haninovich) have fiduciary duties and a duty of loyalty to the party who hires them.  Both are bound by their positions as agents of their employer, as discussed in *Compsolve, Inc. v. Neighbor*, Slip Copy, 18 Misc.3d 1104, 2007 WL 4442412 (Sup. Ct. Erie Co., 2007), involving an independent contractor.  The court noted that an agent owes a duty of undivided loyalty to his principal (citing Restatement [Second] of Agency §387; 2A N.Y. Jur 2d, Agency §204), and is subject to a duty not to compete with the principle concerning the subject of the agency (citing Restatement [Second] of Agency §292), and that courts "have applied these principles to independent contractors, not just employees (*Byrne v. Barrett*, 268 N.Y. 199 [1935] . . .)."

Similarly, in *Constantin Associates v. Kapetas*, Slip Copy, 17 Misc.3d 1137(A), 2007 WL 4294732 (N.Y. Co. 2007), Judge Fried discussed an employee's fiduciary duty

based on agency, citing the Court of Appeals: "an employee 'is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." Lamdin v. Broadway Surface Advertising Corp., 272 N.Y. 133, 138 (1936)." This rule of an agent's fiduciary duty applies equally to an independent contractor.

Nor is it significant that there is no written non-compete agreement. *Support Systems Associates, Inc. v. Tavolacci*, 135 A.D.2d 704, 706 (2d Dep't. 1987), where the Court held: "Even in the absence of a contract restriction, a former employee is not entitled to solicit customers by fraudulent means, the use of trade secrets, or confidential information (*citation omitted*)." To the same effect, and for a good discussion of the law, see *Alpha Funding Group, Inc. v. Aspen Funding LLC*, Slip Copy, 2007 WL 3375871 (Sup. Ct. Kings Co. 2007). See also *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995), protecting trade secrets even in the absence of a non-compete agreement.

At a minimum, there are serious questions going to the merits and providing fair ground for litigation.

### Balancing of Equities

It is clear that use of DataBit's trade secrets by the defendants will cause severe injury to DataBit by loss of a client who supplied 60% of DataBit's revenues last year. Loss of such business by legitimate competition is always a possibility. But loss of such business by misuse of DataBit's trade secrets to gain a competitive edge is preventable. The potential injury to DataBit is clear.

On the other hand, preventing the defendants from misusing DataBit's trade secrets merely levels the playing field. The defendants are free to conduct any other

10

business with Montefiore or any with other customer. They are just not allowed to capitalize on the use of information that does not belong to them.

Maintenance of the *status quo* is required here. Once the *status quo* is disrupted by publication to others of DataBit's trade secrets, or once Montefiore accepts a bid and signs a contract with Haninovich and his associates, the cat cannot be put back in the bag.

## CONCLUSION

The Motion should be granted in all respects.

Dated:    Nanuet, New York
          February 12, 2008

Respectfully Submitted,

PAUL SAVAD, ESQ.
PAUL SAVAD & ASSOCIATES
Attorneys for Plaintiff DataBit Inc.
55 Old Turnpike Road, Suite 209
Nanuet, New York 10954
(845) 624-3820

On the Memorandum:

      Paul Savad, Esq.
      Susan Cooper, Esq.

11