Paul Savad (PS 5358)
Paul Savad & Associates
Attorneys for Plaintiff DataBit, Inc.
55 Old Turnpike Road, Suite 209
Nanuet, New York 10954
(845) 624-3820

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DATABIT, INC.,

                        Plaintiff,                   Case No. 08cv1229
                                                                     (MGC)(AJP)

         -against-

                                                                         **AMENDED VERIFIED**
                                                                       **COMPLAINT**

MORDECHAI HANINOVICH; OSI KAMINER;
ODED LEVY; ADVANCED SOLUTIONS & SUPPLY LLC;
and JOHN DOE, being and intended to be an individual
or entity using DataBit Inc.'s proprietary information,

                                                                    Defendants.
------------------------------------------------------------x

      Plaintiff, DATABIT, INC., by its attorneys, Paul Savad and Associates, complaining of the defendants, alleges as follows:

      1.    At all times pertinent herein, plaintiff, DataBit Inc. ("DataBit"), was and is a foreign corporation duly authorized to do business in the State of New York, with offices at 350 Fifth Avenue, New York, NY 10118.

      2.    Upon information and belief, at all times pertinent herein, Defendant Mordechai (Modi) Haninovich ("Haninovich") was and is a resident of the County of New York, State of New York.

1

3. At all times pertinent herein, Defendant Osi Kaminer ("Kaminer"), was and is a resident of the County of New York, State of New York.

4. Upon information and belief, at all times pertinent herein, Defendant Oded Levy ("Levy") was and is a resident of the County of New York, State of New York.

5. Upon information and belief, Defendant Advanced Solutions & Supply LLC ("Advanced") is a domestic liability company with offices in the County of New York, State of New York.

6. Defendant John Doe is intended to be an individual or an entity, currently unknown to plaintiff, who has obtained and is using or planning to use proprietary information of DataBit provided by Haninovich and/or Kaminer, to provide to DataBit's customers those computer services now provided by DataBit.

7. DataBit is a Value Added Reseller (VAR) of computer systems, equipment and services to medium and large sized businesses.

8. In or about March of 2006, Shlomie Morgenstern ("Morgenstern") purchased DataBit, which was formerly a wholly owned subsidiary of Data Systems & Software, Inc. ("Data Systems"), which was a publicly traded company founded by Morgenstern's father, who served as its president and CEO.

9. Morgenstern is the president and sole shareholder of DataBit.

10. Sometime in 1992, Haninovich was hired by DataBit as an account representative handling sales in the continental United States.

11. Haninovich did not bring any clients into DataBit when he was hired, and began by servicing previously-existing accounts of DataBit while working to develop new accounts for DataBit.

12. For reasons unknown to anyone at DataBit today, Haninovich has been carried on the books of DataBit as a 1099 independent contractor since he was first hired. Haninovich is the only one in the company classified as a 1099 contractor.

13. Upon information and belief, Haninovich's status as a 1099 contractor was based on his U.S. immigration status as an Israeli citizen without a green card.

14. DataBit paid for an attorney for many years to help Haninovich obtain a green card and/or citizenship.

15. At all times pertinent, Haninovich was acting as an agent of and on behalf of DataBit pursuant to an oral agreement, which was followed for many years, with DataBit paying all of Haninovich's business expenses, plus base compensation, commissions, medical benefits, car and cell phone costs, and an expense account, in return for which Haninovich developed and serviced customers of DataBit.

16. In or about the end of 1994 or the beginning of 1995, Haninovich brought Montefiore Medical Center to DataBit, which contracted with Montefiore to provide computer consultation services, computer equipment and technical support.

17. In order to develop and service Montefiore's account, DataBit has at all times provided all of the necessary capital, technical support, ordering services, shipping services, accounting services, legal services, paid all expenses, and eventually provided a full-time employee dedicated solely to the Montefiore account under Haninovich's direction.

18. DataBit has provided computer services for Montefiore continuously for 13 years, initially under written contract, and for many years thereafter and to date pursuant to a continuing agreement whereby DataBit has provided Montefiore with

most of its computer consulting, purchasing, installation and maintenance needs, as and when requested by Montefiore, and has paid Haninovich to service the account and to be on-site at an office in Montefiore multiple days per week to oversee the continuous operation of a system that has grown to over 10,000 computer stations.

19. In 2007, Montefiore's account constituted 60% of DataBit's revenues.

20. Although neither DataBit nor Montefiore was obliged to continue this business relationship for any stated period of time, it has continued uninterrupted for 13 years without competition from any other provider, and without any indication that the arrangement would change, and with the historical understanding that DataBit's services to Montefiore could not be abruptly terminated without damage to Montefiore's operations and without breaching an implied covenant of good faith and fair dealing.

21. Upon information and belief, a transition period of six months is required to transfer responsibilities to service this account to another provider without disruption of Montefiore's and DataBit's operations, which expectation was relied upon by both parties.

22. On or about December 27, 2008, DataBit's CFO sent an email to Haninovich explaining that DataBit's accountants were questioning Haninovich's status as a 1099 employee, and notified Haninovich that due to stricter IRS requirements, he could no longer be considered a self-employed 1099 contractor, and was requested to sign the necessary employee forms.

23. Haninovich responded that his 1099 status was not his option and that he was forced into it. Nonetheless, he did not sign the employee forms.

24. On January 25, 2008, Haninovich resigned from DataBit without notice, effective immediately, knowing that DataBit's president, Shlomie Morgenstern, would be out of the country until January 30, 2008.

25. Upon information and belief, for a period of time prior to resigning, Haninovich began servicing and making arrangements to continue to service the Montefiore account with other entities and/or individuals, including Levy and Advanced, who provide services similar to those provided by DataBit, and obtained legal services to further these arrangements.

26. Prior to Haninovich's resignation, he failed to properly service the Montefiore account, leading to a written complaint by Montefiore to DataBit on January 29, 2008, complaining that outstanding orders had not been filled for weeks.

27. On January 28, 2008, after Montefiore learned from Haninovich that he was no longer working for DataBit, Montefiore sent an email to Kaminer, a DataBit employee assigned as Haninovich's full-time assistant for the Montefiore account, and demanded that DataBit's president, Shlomie Morgenstern, contact them that very day to explain how DataBit intended to meet Montefiore's needs without a break in computer supplies and services. Neither Haninovich nor Kaminer forwarded Montefiore's email to Shlomie Morgenstern for 24 hours, when they knew that Morgenstern would have already boarded a 12-hour flight from Israel to New York.

28. On January 29, 2008, Montefiore sent an angry email to Shlomie Morgenstern for not responding to Montefiore's urgent message the previous day.

29. Kaminer resigned her position with DataBit on February 1, 2008. Upon information and belief, she conspired with Haninovich to sabotage DataBit's relationship with Montefiore, and to divert Montefiore's business to the defendants for the benefit of the defendants.

30. On the night of January 29, 2008, Morgenstern arrived back in the United States and met the next morning with lawyers to commence legal action to prevent Haninovich from misappropriating DataBit's trade secrets and proprietary information, taking unfair advantage of the knowledge he had acquired at DataBit's expense while working for DataBit, which knowledge is essential to service the Montefiore account without interruption, and which knowledge could not be timely obtained by a competitor without fraud or misappropriation of DataBit's proprietary trade secrets.

31. The proprietary trade secrets that Haninovich and Kaminer threaten to misappropriate include DataBit's suppliers and costs, DataBit's profit margin, and extensive exclusive knowledge of all of Montefiore's computer needs, including the status of 10,000 computer stations and systems, what specific equipment requires upgrade or replacement, and well-developed relationships with the key personnel at Montefiore required to timely accomplish all purchases and services required by Montefiore.

32. Haninovich did not return his computer to DataBit until February 1, 2008, after demanded by DataBit's attorneys, and, upon information and belief, has retained copies of account information needed to continue to service Montefiore's account.

33. Sometime prior to January 18, 2008, while still working for DataBit, Haninovich diverted business from DataBit to Advanced and/or to Levy by using DataBit's technicians to service Montefiore's computers and arranging for Advanced to be paid for said services.

34. Upon information and belief, sometime prior to January 25, 2008, Haninovich, for his own benefit and against the interests of DataBit, delayed providing a quote for 41 laptop computers to Montifiore and/or diverted this business from DataBit for his own personal gain.

35. Upon information and belief, Haninovich engaged in other acts of disloyalty to DataBit for his own personal benefit while still working for DataBit.

36. DataBit has retained Montefiore as a client for 13 years by carefully guarding its trade secrets, which are unknown to its competitors and unknown by Montefiore and/or protected by Montefiore in its own best interests.

37. If the defendants are not restrained from misappropriating this proprietary information, DataBit will suffer millions of dollars of losses, some of which can be calculated based on past performance and some of which are incapable of calculation, since it is impossible to know what business DataBit might have acquired by the continued use of Montefiore as a sales tool to attract new accounts, and since it will be impossible to know how long Montefiore would have continued it's long-term virtually exclusive use of DataBit for its computer services in the absence of the wrongful acts of Haninovich, Kaminer and the other defendants.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST HANINOVICH & KAMINER
(Breach of Fiduciary Duty/Loyalty)

38. While acting as agent for DataBit, Haninovich and Kaminer had a fiduciary duty and a duty of loyalty to DataBit not to misappropirate confidential and proprietary information for their own benefit against the interests of DataBit and not to divert business from DataBit for their own personal benefit.

39. Haninovich's and Kaminer's conduct in taking advantage of their knowledge of DataBit's confidential trade secrets, including DataBit's profit margin, the clients' specific needs, timetable and projects in process, suppliers of products and services, as well as their unique relationship with DataBit's clients developed at DataBit's expense, and in competing with DataBit and positioning themselves to compete with DataBit while still working for DataBit, all constitute a breach of their fiduciary duty and breach of their duty of loyalty to DataBit.

40. Upon information and belief, Haninovich and Kaminer used DataBit's property, including computers, phones, faxes, emails, employees and technical consultants, to compete with DataBit and divert business from DataBit's clients to themselves.

41. By reason of the foregoing, the plaintiff will sustain damages of 10 million dollars.

### AS AND FOR A SECOND CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
(Unfair Competition & Misappropriation of Proprietary Trade Secrets)

42. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 41 with the same force and effect as if fully set forth herein at length.

43. The defendants are engaging in unfair competition in that they have wrongfully and knowingly misappropriated and are making use of proprietary information, relationships and client good will, acquired while Haninovich and Kaminer were working for DataBit as its agents and on its behalf.

44. By reason of the foregoing, the plaintiff will sustain damages of 10 million dollars.

### AS AND FOR A THIRD CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
(Tortious Interference with Contract and Prospective Economic Advantage)

45. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 44 with the same force and effect as if fully set forth herein at length.

46. The defendants have knowingly and intentionally conspired together to interfere with the agreement and/or prospective economic advantage enjoyed by DataBit with Montefiore for over a decade.

47. The defendants know that there is an existing contractual arrangement between DataBit and Montfiore and/or that DataBit has the prospective economic advantage of continuing to provide computer services to Montefiore.

48. In the absence of the defendants' wrongful conduct, Montefiore would have continued its business relationship with DataBit for an indefinite time, as evidenced by the historical uninterrupted ever-increasing business relationship.

49. By reason of the foregoing, the plaintiff will sustain damages of 10 million dollars.

### AS AND FOR A FOURTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
(Accounting)

50. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 49 with the same force and effect as if fully set forth herein at length.

51. By reason of the foregoing, plaintiff is entitled to an accounting of all expenses and revenue from clients of DataBit for whom the defendants or any of them may provide the same services provided by DataBit.

### AS AND FOR A FIFTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
(Preliminary & Permanent Injunction)

52. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 51 with the same force and effect as if fully set forth herein at length.

53. The damage that will be caused to DataBit if the defendants proceed to solicit Montefiore's business based on DataBit's proprietary trade secrets is

irreparable, in that it arises from a loss of good will and may result in unknown loss of prospective new clients and loss of an unknown number of years of continued business from Montefiore.

54. By reason of the foregoing, plaintiff is entitled to a preliminary and permanent injunction enjoining the defendants from providing to Montefiore any of the computer services provided by DataBit to Montefiore in 2007.

WHEREFORE, plaintiff demands judgment against the defendants as follows:

A. On the First Cause Of Action against Haninovich and Kaminer, damages in the sum of 10 millions dollars;

B. On the Second Cause Of Action against all defendants, damages in the sum of 10 million dollars;

C. On the Third Cause of Action against all defendants, damages in the sum of ten million dollars;

D. On the Fourth Cause of Action against all defendants, an accounting of all expenses and revenues from clients of DataBase;

E. On the Fifth Cause of Action against all defendants, a preliminary and permanent injunction enjoining the defendants from providing to Montefiore any of the computer services provided by DataBit to Montefiore in 2007.

F. Interest on all damages, together with the costs and disbursements of this action and such further relief as the Court deems just and proper.

Dated: Nanuet, New York
       February 21, 2008

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　PAUL SAVAD
　　　　　　　　　　　　　　　　　　　　　PAUL SAVAD & ASSOCIATES
　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　　　　55 Old Turnpike Rd. Ste. 209
　　　　　　　　　　　　　　　　　　　　　Nanuet, New York 10954
　　　　　　　　　　　　　　　　　　　　　845-624-3820

**VERIFICATION**

STATE OF NEW ~~YORK~~ Jersey )
                  Bergen ) ss:
COUNTY OF ~~ROCKLAND~~ )

SHLOMIE MORGENSTERN, duly affirms and says: I am President of Plaintiff DATABIT INC., in the action herein. I have read the annexed Amended Verified Complaint and know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

I affirm pursuant to my religious beliefs

_____
SHLOMIE MORGENSTERN

Affirmed before me this
20TH day of February, 2008

_____
Notary Public

-10